IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

_____

| | |
|---|---|
| DERICK MILLER,<br><br> Plaintiff,<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION;<br><br>THE RISK MANAGEMENT AGENCY of the UNITED STATES DEPARTMENT OF AGRICULTURE; And<br><br>THOMAS J. VILSACK, in his capacity as Secretary of the United States Department of Agriculture,<br><br> Defendants. | Civil Action No. 5:23-CV-00069-C |

## **DEFENDANT'S BRIEF IN SUPPORT**

 Respectfully submitted,

 LEIGHA SIMONTON
 UNITED STATES ATTORNEY

 /s/ Ann E. Cruce-Haag
 ANN E. CRUCE-HAAG
 Assistant United States Attorney
 Texas Bar No. 24032102
 1205 Texas Avenue, Suite 700
 Lubbock, Texas 79401
 Telephone: (806) 472-7351
 Facsimile: (806) 472-7394
 Email:  ann.haag@usdoj.gov

# Table of Contents

I. Summary ............................................................................................................. 1

II. Background ........................................................................................................ 2

    A. The Federal Crop Insurance Act, 7 U.S.C. §§ 1501-24. ............................. 2

    B. Crop Insurance Policies. ............................................................................. 3

    C. Loss Exclusion for Failure to Follow "Good Farming Practices." ............. 3

    D. RMA's Good Farming Practice Standard Handbook. ................................. 4

III. Undisputed Material Facts ................................................................................. 4

IV. Legal Standards .................................................................................................. 7

    A. Summary Judgment Standard ..................................................................... 7

    B. Standard of Review for APA Claims .......................................................... 8

V. Argument ............................................................................................................ 10

    A. The RMA's GFP determination was based on substantial evidence. ......... 10

        1. Seeding Rate ........................................................................................ 10

        2. Crop Rotation Practices ...................................................................... 11

        3. Weed Management .............................................................................. 11

        4. Irrigation Management ........................................................................ 12

    B. The RMA's GFP determination was neither arbitrary nor capricious. ....... 13

VI. Conclusion .......................................................................................................... 14

# Table of Authorities

*Other Authorities*

3015 U.S. 197, 229,
   59 S. Ct. 206, 83 L. Ed. 126 (1939) .................................................................................. 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................... 8, 9

*Anderson*, 477 U.S. at 248 ................................................................................................... 9

*Bazan v. Hidalgo Cnty.*,
   246 F.3d 481 (5th Cir. 2001) ............................................................................................. 8

*Bennett v. Spear*,
   5 F. Supp. 2d 882 (D.Ore. 1998) ............................................................................... 15, 20

*Biestek v. Berryhill*,
   139 S. Ct. 1148 (2019) ..................................................................................................... 13

*Buffalo Marine Servs. Inc. v. United States*,
   663 F.3d 750 (5th Cir. 2011) ........................................................................................... 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 9, 10

*Center for Marine Conservation v. Brown*,
   917 F. Supp. 1128 (S.D. Tex. 1996) .......................................................................... 14, 19

*Christensen v. Harris Cty.*,
   529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ................................................ 5

*Gibson v. United States*,
   11 Cl.Ct. 6 ........................................................................................................................ 12

*Hidalgo Cty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020) ......................... 8

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ........................................................................................... 10

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) .......................................... 10

*Loggerhead Turtle v. County Council*,
   120 F. Supp. 2d 1005 (M. D. Fla. 2000) ......................................................................... 14

*Marsh v. Oregon Natural Res. Council*,
    490 U.S. 360, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989) ...................................... passim

*Motor Vehicle Mfg. Ass'n. v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29, 103 S. Ct. 2856, 77 L. E. 2d 443 (1983) ................................................... 12

*Skidmore v. Swift & Co.*,
    323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ........................................................ 5

*Texas Clinical Labs, Inc. v. Sebelius*,
    612 F.3d 771 (5th Cir. 2010) ......................................................................................... 11

*Urban Areas v. Fed. Highway Admin.*,
    779 F. Supp. 2d 542 (W.D. Tex. 2011) ......................................................................... 13

*Wilson v. U.S. Dep't of Agric.*,
    991 F.2d 1211 (5th Cir. 1993) ....................................................................................... 11

*Wilson v. U.S. Dept. of Agriculture*,
    991 F.2d 1211 (5th Cir. 1993) ....................................................................................... 12

**Statutes**

5 U.S.C. § 701 ........................................................................................................................ 1

5 U.S.C. § 706(2)(A) ............................................................................................................. 7

7 U.S.C. § 1501-24 ................................................................................................................ 1

7 U.S.C. § 1502(a) ................................................................................................................ 1

7 U.S.C. § 1502(b)(2) ........................................................................................................... 2

7 U.S.C § 1503 ...................................................................................................................... 1

7 U.S.C. § 1508(a)(3)(A)(iii) ............................................................................................. 2, 3

7 U.S.C. § 1516(b) ................................................................................................................ 2

7 U.S.C. § 6933(a) ................................................................................................................ 1

7 U.S.C. § 6933(b)(1)-(3) ..................................................................................................... 1

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 6

Federal Rule of Civil Procedure 5(b)(2) .................................................................................. 13

*Regulations*

7 C.F.R. § 400.701 ..................................................................................................................... 1

7 C.F.R. § 400.98 ....................................................................................................................... 3

7 C.F.R. § 457 ............................................................................................................................ 2

7 C.F.R. § 457.104 ..................................................................................................................... 2

7 C.F.R. § 457.134 ................................................................................................................. 2, 4

7 C.F.R. § 457.8 ................................................................................................................. 2, 3, 4

The Federal Crop Insurance Corporation ("FCIC"), the Risk Management Agency ("RMA"), an agency of the United States Department of Agriculture ("USDA"), and Thomas J. Vilsack, in his capacity as Secretary of the USDA ("Secretary"), (collectively, the "Defendants"), cross-move for summary judgment in Defendants' favor on all claims in this case and to deny Plaintiff Derick Miller's Motion for Summary Judgment.

## I.   Summary

This is an action for judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, *et seq.*, of a final agency action relating to the federal crop insurance program. Plaintiff seeks review of RMA's good-farming-practices determination relating to his 2021 peanut and cotton crops. Federally backed crop insurance covers crop losses that are unavoidable and due to naturally occurring events; crop insurance does not protect against losses due to farmers' negligence or any failure to follow "good farming practices." Thus, USDA-backed crop insurance policies contain an exclusion for losses caused by the farmer's "[f]ailure to follow recognized good farming practices for the insured crop." 7 C.F.R. § 457.8.

In this case, the RMA investigated Plaintiff's farming practices after receiving a confidential complaint that he was not following good farming practices. The RMA considered the available evidence (including evidence submitted by Plaintiff), consulted experts, and rationally determined that Plaintiff had failed to follow good farming practices applicable to his peanut and cotton crops in the 2021 growing season. Specifically, the RMA found Plaintiff had:

- planted too few seeds;

- failed to rotate crops (Plaintiff planted peanuts in 2021 in the same field where peanuts were grown in 2020);

- applied pre-emergent and post-emergent weed controls too late (which is especially important in Texas for cotton); and

- failed to adequately water the peanut fields.

Because the agency rationally determined that Plaintiff had failed to follow good farming practices based on recognized standards, the available evidence, and qualified experts, Plaintiff cannot establish that the RMA acted arbitrarily or capriciously in denying his crop-insurance claims. Therefore, and for the reasons further explained below, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter final judgment in favor of Defendants dismissing Plaintiff's claims with prejudice.

## II.   Background

**A.   The Federal Crop Insurance Act, 7 U.S.C. §§ 1501–1524.**

The Federal Crop Insurance Act ("the Crop Insurance Act") is designed to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). Congress created the FCIC, a government "corporation" acting as an agency of the USDA, to administer the Crop Insurance Act. 7 U.S.C § 1503. Congress also created the RMA to supervise the FCIC and administer all programs authorized under the FCIC. 7 U.S.C. §§ 6933(a), (b)(1)-(3); 7 C.F.R. § 400.701. Crop insurance pursuant to the Crop

Insurance Act is offered through private insurance companies that are referred to as "approved insurance providers" or "AIPs." *See* 7 U.S.C. § 1502(b)(2). The FCIC reinsures the AIPs and is the indemnitor for a covered loss. *Id.*

### B.     Crop Insurance Policies

The Secretary and the FCIC are authorized to issue, and have issued, regulations necessary to carry out the provisions of the Crop Insurance Act. 7 U.S.C. § 1516(b); 7 C.F.R. § 457. The Common Crop Insurance Policy is found in 7 C.F.R. § 457.8. The Peanut Crop Insurance Provisions for 2017 and succeeding crop years are set forth in 7 C.F.R. § 457.134. The Cotton Crop Insurance Provisions for 2017 and succeeding crop years are set forth in 7 C.F.R. § 457.104. Insurance is provided only against certain causes of loss that occur within the insurance period. *Id.* Loss due to adverse weather conditions is an insured cause of loss. *Id.*

### C.     Loss Exclusion for Failure to Follow "Good Farming Practices"

The Good Farming Practices exclusion is both a statutory and a policy-based exclusion. The Crop Insurance Act specifically provides for exclusion of losses resulting from "the failure of the producer to follow good farming practices." 7 U.S.C. § 1508(a)(3)(A)(iii). The Common Crop Insurance Policy's basic provisions also contain the same exclusion. 7 C.F.R. § 457.8. "Good Farming Practices" are defined as follows:

> The production methods utilized to produce the insured crop and allow it to make normal progress towards maturity and produce at least the yield used to determine the production guarantee or amount of insurance, including any adjustments for late planted acreage, which are those generally recognized by agricultural experts or organic agricultural experts, depending on the practice, for the area. We may, or you may request us to,

contact FCIC to determine if production methods will be considered "good farming practices."

7 C.F.R. § 457.8. The Crop Insurance Act authorizes the RMA to determine whether producers are following good farming practices. 7 U.S.C. § 1508(a)(3)(A)(iii); 7 C.F.R. § 400.98.

### D.     RMA's Good Farming Practice Standard Handbook

The Good Farming Practice Standard Handbook for 2021 and Succeeding Crop Years, Number 14060, issued July 15, 2020 ("Handbook") provides FCIC-issued standards and procedures for RMA's good-farming-practices determinations for the 2021 crop year at issue in this case.[1] The Handbook states that RMA employees should base good-farming-practices determinations on the agronomic situation of the policyholder and an opinion from an Agricultural Expert. Handbook ¶ 22(A). The Handbook also provides guidance on the identity of RMA approved Agricultural Experts and provides a procedure by which RMA may approve new Agricultural Experts. Handbook ¶ 21(B).

### III.    Undisputed Material Facts

In 2021, Plaintiff purchased Crop Risk Insurances, Inc.'s ("CRS") Crop Insurance Policies numbered TX 180-4802501-21 and TX 180-4811684-21 (collectively the "Policies"). The Policies insured the peanut and cotton crops against excess precipitation, drought, and other natural causes. 7 C.F.R. §§ 457.8, 457.134. On July 9, 2021, RMA

---

[1] While a handbook does not have the force of law, federal courts defer to agency interpretations contained in opinion letters or handbooks to the extent that those interpretations have "the power to persuade." *See, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

opened a review on Plaintiff based on a confidential complaint alleging that Plaintiff was not following good farming practices and informed Plaintiff of this review by letter. AR-0011.

On August 31, 2021, CRS Loss Adjusters assessed and performed inspections of Plaintiff's peanut and cotton crops. AR 7369.

On October 12, 2021, Plaintiff initiated a claim on his peanut crops for excessive wind. AR-7369.

On October 14, 2021 – April 14, 2022, Plaintiff sent records, receipts, weather documents, and expert letters to CRS, per their request. AR-6433-39; 7003-16.

On October 20, 2021, CRS Reviewer James Dunphy, and ag expert, James Todd, met with Plaintiff via conference call. AR 6662.

On October 20, 2021 – April 26, 2022, CRS received, compiled, and reviewed records. AR-0001-6973.

On May 19, 2022, CRS met with Plaintiff to present their findings. AR 6663.

On June 9, 2022, CRS issued a Controversial Claim Letter ("CCL") to Plaintiff, stating that Plaintiff did not follow good farming practices on his peanut and cotton crops. AR-6622-30. The decision resulted in i) no indemnity due as the guarantee per acre was assessed as production to count for irrigated peanuts and ii) a reduction in the indemnity on Plaintiff's cotton crops. *Id;* AR 7370.

On July 8, 2022, Plaintiff requested a good-farming-practices determination from RMA. AR-7003-16.

On August 4, 2022, RMA issued Plaintiff an acknowledgement letter which

requested any additional documentation that would be pertinent to RMA's determination. AR 7439-40.

On August 19, 2022, Plaintiff provided additional documentation and letters from Geoff Cooper, County Extension Agent for Terry County, and Justin Tuggle, an Agricultural Expert, in support of his claim that he had followed good farming practices. AR-7395; AR-7403-7427.

On October 25, 2022, RMA issued its good-farming-practices determination in which it found that Plaintiff did not follow good farming practices. AR-7149-7266. RMA reviewed materials submitted by both Plaintiff and CRS, PRISM reports,[2] and published materials. AR 7248. RMA noted that Plaintiff's offered ag experts, Justin Tuggle and Geoff Cooper, provided contradictory information to that provided by CRS and their ag expert, Mark Scott. AR 7251, However, RMA found "the specific observational and photographic evidence presented by Mark Scott and CRS was more credible than the general nature or the reports of Mr. Tuggle and Mr. Cooper. *Id*. RMA concluded that Miller "failed to follow a generally recognized good farming practice for [his] peanut and cotton crops, which is not an insurable cause of loss." AR-7252-3.

Following RMA's determination, Plaintiff filed a complaint in the above-

---

[2] "PRISM reports" refer to precipitation reports produced by the PRISM Climate Group at Oregon State University (the USDA has a long-term partnership with the PRISM Climate Group) based on the PRISM technique, which "uses point data in conjunction with a digital elevation model to create gridded datasets of precipitation and temperature for the U.S." https://www.nrcs.usda.gov/programs-initiatives/sswsf-snow-survey-and-water-supply-forecasting-program/national-water-and#:~:text=PRISM,and%20temperature%20for%20the%20U.S. (last accessed Jan. 9, 2024).  PRISM stands for "Parameter-elevation Regressions on Independent Slopes Model." https://prism.oregonstate.edu/FAQ/ (last accessed Jan. 9, 2024).

captioned case seeking judicial review and declaratory relief pursuant to the APA and the Crop Insurance Act. AR-7084-148.

## IV.     Legal Standards

**A.     Summary Judgment Standard**

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). An issue is considered "genuine" if it is "real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

To prevail on a summary-judgment motion, the moving party bears the initial burden of demonstrating there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can carry this burden by pointing out the absence of evidence to support an essential element of the nonmovant's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Once the movant has done so, the nonmovant must go beyond the pleadings, and by its own evidence, set forth specific facts showing a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing

*Celotex*, 477 U.S. at 324). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

**B.     Standard of Review for APA Claims**

Judicial review under the APA is limited to the administrative record. 5 U.S.C. § 706. When a party seeks judicial review of a federal agency's action under the APA, the agency action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Under the APA, RMA's good-farming-practices determination may be set aside only if Plaintiff shows that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*; *accord Wilson v. U.S. Dep't of Agriculture*, 991 F.2d 1211, 1215 (5th Cir. 1993). RMA's decision is presumptively valid; Plaintiff bears the burden of showing otherwise. *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010).

A decision is arbitrary or capricious "only when it is 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Wilson*, 991 F.2d at 1215 (citing *Gibson v. United States*, 11 Cl.Ct. 6, 15 (1986) (quoting *Motor Vehicle Mfg. Ass'n. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Plaintiff must prove that RMA's findings of fact are not supported by substantial evidence. *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 753-54 (5th Cir. 2011).

Under the substantial-evidence standard, the Court will look to the existing administrative record and ask whether it contains "sufficen[t] evidence" to support the

agency's factual determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1939)). The threshold for "substantial evidence" is "not very high." *Biestek*, 139 S. Ct. at 1155. Substantial evidence is "more than a mere scintilla" and "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Consol. Edison*, 305 U.S. at 229; *Biestek*, 139 S. Ct. at 1155.

Furthermore, because the RMA's review of Plaintiff's farming practices was within the agency's special scientific expertise, the standard of review of RMA's determination is "very deferential." *Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*, 779 F. Supp. 2d 542, 562 (W.D. Tex. 2011) (citing *Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1143 (S.D. Tex. 1996)); *see also Loggerhead Turtle v. Cnty. Council*, 120 F. Supp. 2d 1005, 1013 (M.D. Fla. 2000) (noting that a court must be "most deferential" because an agency's "special scientific expertise" was involved). "An agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, the court might find contrary views more persuasive." *Ctr. for Marine Conservation*, 917 F. Supp. at 1143 (quoting *Marsh*, 490 U.S. at 378); *see also Bennett*, 5 F. Supp. 2d at 885 (finding that, when specialists express contrary views, an agency is given discretion to rely on "the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive" (quoting *Marsh*, 490 U.S. at 378)). The question for this Court is not which expert's opinion the Court finds more persuasive but whether the RMA acted arbitrarily or capriciously when it relied on the reasonable opinions of its own qualified

experts.

## V.     Argument

The RMA's good-farming-practices determination to deny insurance coverage was based on a legitimate, authorized exception in the 2021 Policy. The record does not support Plaintiff's claim that RMA acted arbitrarily and capriciously. To the contrary, the record shows that RMA based each of its determinations on its review of Plaintiff's agronomic situation and production methods, on published material written by Agricultural Experts, and on an Agricultural Experts' written opinions. Because RMA based its determinations on substantial evidence, RMA did not act arbitrarily or capriciously.

**A.      The good-farming-practices determination was based on substantial evidence.**

RMA reviewed Plaintiff's farming practices in four categories: seeding rates, irrigation management, crop rotation practices, and weed management. For each category, RMA reviewed all documents provided by CRS and Plaintiff, and based its determination on Plaintiff's agronomic situation and expert opinions. Each category of RMA's determination will be discussed separately below.

**1.      Seeding Rate**

RMA reviewed CRS' photographic evidence which showed that Plaintiff's peanut stands "were not comparable to neighboring peanut fields." AR-7371; AR-7255. The UGA Peanut Production Guide states that a seeding rate of 73,000 to 87,000 seed/acre is "typically adequate when planting quality seed in good conditions and maintaining equipment with recommended operation settings." AR-7371. During a CRS growing-

season inspection, Plaintiff stated that his seeding rate was 47,000 seed/acre for all his peanut crops. AR-7236. The RMA concluded that Plaintiff's seeding rate was lower than recommended by agricultural experts. AR-7371. For these reasons, RMA rationally determined that Plaintiff's seeding rate failed to follow good farming practices. *Id.*

### 2. Crop Rotation

RMA reviewed CRS' growing season inspections and agricultural experts' opinions to determine that Plaintiff did not follow proper crop-rotation practices when planting peanut crops. AR-7371. Plaintiff stated in CRS' growing-season inspection that for the 2021 growing season, he planted his peanut crops where peanuts were grown during the 2020 growing season. AR-7371. The Texas Peanut Production Guide states that "[c]rop rotation is the key to profitable peanut production" and "[p]eanuts should be planted in the same field only 1 year out of 3, or in the best case, 1 year out of 4." AR-7073. Advantages of crop rotation include "improved soil fertility, reduced disease and nematode problems and more manageable weed control systems." *Id.* For these reasons, RMA rationally determined that Plaintiff's crop rotation practices failed to follow good farming practices. *Id.*

### 3. Weed Management

RMA reviewed CRS's growing-season inspections, photographs of the fields, and the adjuster's loss report. AR-7371. Regarding Plaintiff's peanut crops, RMA concluded that while pre-emergent weed control and post-emergent chemical and mechanical controls were applied, "these methods were applied too late to adequately control the weeds." AR-7371. Regarding Plaintiff's cotton crops, RMA consulted Scott's report

which stated that the herbicide program Plaintiff used on his cotton crops was "lacking," as he did not apply a "yellow herbicide" prior to planting, used non-labeled herbicides on soils susceptible to crop injury, and did not apply post-emergent topical residual herbicides in a timely manner. AR-7372. Scott's report supported CRS' conclusion that Plaintiff failed to utilize a proper herbicide program and weed-control measures. *Id.* Furthermore, the Texas A&M AgriLife *Weed Management in Texas Cotton* publication states, "[e]arly-season weed management" is a "critical" part of any "weed management program, especially in cotton." AR-7282. For these reasons, RMA rationally determined that Plaintiff's weed-control methods failed to follow good farming practices for both his cotton and peanut crops. AR-7372.

### 4. Irrigation Management

RMA consulted the Common Crop Insurance's Basic Provisions, which defines an irrigation practice as:

> a method of producing a crop by which water is artificially applied during the growing season by appropriate systems and at the proper times, with the intention of providing the quantity of water needed to produce at least the yield used to establish the irrigated production guarantee or amount of insurance on the irrigated acreage planted to the insured crop.

AR-7346. RMA independently developed PRISM reports on each of Plaintiff's peanut fields and verified the reported precipitation with archival rainfall reports from the National Weather Service. AR-7373; AR-7304-44. Using these reports, RMA determined that Plaintiff's reported rainfall amounts on each of his peanut fields were "overestimated by an average of 7.75 [inches]," and the water inputs in Plaintiff's fields ranged from

"17.34-23.18 [inches]." AR-7373. Texas A&M AgriLife's *Texas Peanut Production Guide* recommends a total seasonal water requirement of 24 to 28 inches for maximum peanut yield. AR-7073. For these reasons, RMA rationally determined that Plaintiff's irrigation practices failed to follow good farming practices. AR-7373.

### B. The RMA's good-farming-practices determination was neither arbitrary nor capricious.

Plaintiff essentially attempts to engage in a battle of the experts. However, "[a]n agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, the court might find contrary views more persuasive." *Ctr. for Marine Conservation*, 917 F. Supp. at 1143 (quoting *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989)); *see also Bennett v. Spear*, 5 F. Supp. 2d 882, 885 (D. Ore. 1998) (finding that, when specialists express contrary views, an agency is given discretion to rely on "the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive") (*quoting Marsh*, 490 U.S. at 378, 109 S. Ct. 1851). The question for this Court is not which expert's opinion the Court finds more persuasive but whether the RMA based its determination on substantial evidence by relying on reasonable opinions of its own qualified experts.

RMA reviewed all of the documents provided by both Plaintiff and CRS. In making its scientific findings, RMA relied on a publication created by USDA research scientists compiling knowledge of cotton- and peanut-production methods, a local cotton crop consultant, and agricultural experts. RMA found that Plaintiff's statements regarding

rainfall were contradicted by the PRISM weather reports for Plaintiff's farm. RMA based its determination on substantial evidence, including the reasonable opinions of its own qualified experts.

## VI.   Conclusion

The RMA's good-farming-practices determination to deny insurance coverage was based on a legitimate, authorized exclusion in the 2021 Policy. The record does not support Plaintiff's claim that RMA acted arbitrarily and capriciously. To the contrary, the record shows that RMA followed its own standards by basing each of its determinations on its review of Plaintiff's agronomic situation and production methods, on published material written by Agricultural Experts, and on an additional Agricultural Expert's written opinions. Because RMA complied with its own standards and based its determinations on substantial evidence, RMA did not act arbitrarily or capriciously.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

/s/ Ann E. Cruce-Haag
ANN E. CRUCE-HAAG
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:   (806) 472-7351
Facsimile:   (806) 472-7394
Email: ann.haag@usdoj.gov

## CERTIFICATE OF SERVICE

On January 16, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                              /s/ Ann E. Cruce-Haag
                                              ANN E. CRUCE-HAAG
                                              Assistant United States Attorney