IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DERICK MILLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:23−CV−00069-C |
| | ) | |
| FEDERAL CROP INSURANCE | ) | |
| CORPORATION; | ) | |
| | ) | |
| THE RISK MANAGEMENT AGENCY | ) | |
| of the UNITED STATES DEPARTMENT | ) | |
| OF AGRICULTURE;  and | ) | |
| | ) | |
| THOMAS J. VILSACK, in his capacity as | ) | |
| Secretary of the United States Department | ) | |
| of Agriculture, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

COMES NOW the Plaintiff, Derick Miller, by and through the undersigned Counsel, and

for this Brief in Support of his Motion for Judgment based on the Administrative Record does state

as follows:

Respectfully Submitted:          By: */s/ Grant Ballard*
                                 J. Grant Ballard (AR Bar # 2011185)
                                 ARK AG LAW, PLLC
                                 P.O. Box 224
                                 Clarendon, AR 72029
                                 T:  (870) 747-3813
                                 F:  (870) 747-3767
                                 E:  gballard@arkaglaw.com

                                 *Attorney for Plaintiff*

## TABLE OF CONTENTS

Table of Contents ................................................................................................2

Table of Authorities ..........................................................................................3

    I.       INTRODUCTION .................................................................................5

           A. Overview of the Federal Crop Insurance Program  .................................5

           B. Good Farming Practices ..........................................................................6

    II.      UNDISPUTED FACTS ........................................................................7

    III.    STANDARD OF REVIEW ..................................................................9

    IV.    ARGUMENT ......................................................................................11

          A. *The  GFP Determination Is Properly Reversed by this Court due to Defendants' Failure to Consider Weather Conditions and that Failure of Irrigation Water Supply and Failure of Weed Control Measures Can be Insurable Causes of Loss.* ....................................................................................................*11*

              1.   *Failure of Irrigation Water Supply is not an Uninsurable Failure to Employ Good Farming Practices.* ................................................*13*

              2.   *The Agency Erred in Finding that the Presence of Noxious Weeds must Result in an Adverse Good Farming Practices Determination.* ...............................*14*

              3.   *Refusal to Consider Weather Conditions Constitutes Reversible Error.* .......*16*

         B. *The Defendants' Reliance on Expert Reports Which Suggest that Farming Conditions Were "Ideal" and Defendants' Lack of Consideration of Opposing Expert Opinions Demonstrates Arbitrary Decision Making.* ...............................*17*

         C. *The Conclusions Regarding Farming Practices Are Not Supported by Substantial Evidence as Required by Law.  As a result, the Agency's GFP Determination in this Case is Arbitrary, Constitutes an Abuse of Discretion, and is in Violation of the Defendants' own Procedure and Federal Regulation.* ...................................*20*

              1.   *Peanut Irrigation.* ......................................................................*21*

              2.   *Peanut Weed Control.* ...............................................................*24*

              3.   *Peanut Crop Rotation and Seeding Rate.* ..................................*25*

              4.   *The GFP determination regarding Cotton Production Departed from RMA's Guidelines and Published Procedure.* ........................................*26*

    V.      Conclusion ..........................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711 (W.D. Tex. 2019) …………9

*Chao v. Gunite Corp.,* 442 F.3d 550, 559 (7th Cir.2006)..............................................................19

*DL Farms, LLC, v. United States,* No. 3:21-CV-144, 2023 WL 5721700, at *3 (D.N.D. Sept. 3, 2023) .........................................................................................................................................15, 16

*Federal Crop Ins. Corporation v. Merrill,* 332 U.S. 380 (1947)…………………………………6

*McElmurray v. U.S. Dep't of Agric.*, 535 F. Supp. 2d 1318, 1325 (S.D. Ga. 2008)................19, 21

*NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 406–07(1962)...............................................................19

*Nobles v. Rural Community Ins. Servs*, 122 F.Supp.2d 1290, 1292 (M.D. Al. 2000)....................4

*Owen v. Fed. Crop Ins. Corp.*, No. 3:19-CV-00161, 2020 WL 5913668, at *5 (S.D. Tex. July 27, 2020), <u>report and recommendation adopted,</u> No. 3:19-CV-161, 2020 WL 5912602 (S.D. Tex. Oct. 6, 2020) ...........................................................................................................................21

*Preferred Sites, LLC v. Troup County*, 296 F.3d 1210 (Fed. 11th Cir., 2002) ...............................4

*Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) citing *Chevron Oil Co. v. Andrus,* 588 F.2d 1383, 1386 (5th Cir.1979) ...............................................................................................9

*Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir., 2006)  and  *Estate of Bratton v. Nat'l Union Fire Ins., 215 F.3d 516,* 521 (5th Cir.2000). .............................................................17

*Tieniber v. Heckler,* 720 F.2d 1251, 1254–55 (11th Cir.1983) ....................................................19

*United States v. Morgan,* 193 F.3d 252, 266 (4th Cir.1999). *See also Alamo Express, Inc. v. United States,* 613 F.2d 96, 98 (5th Cir.1980)........................................................................9

*Zahnd v. Sec'y of Dep't of Agric.,* 479 F.3d 767, 773 (11th Cir.2007) .........................................21

**Statutes and Rules**

5 U.S.C. § 704.................................................................................................................................9

5 U.S.C. § 706.................................................................................................................................8

7 U.S.C. § 6999...............................................................................................................................8

7 U.S.C. § 1501 *et seq*....................................................................................................................4

7 U.S.C.A. § 1508 ................................................................................................................5, 6

**Regulations**

7 C.F.R. § 400.168(a). .........................................................................................................5

7 C.F.R. § 457.8 § 1 "Definitions" (2021) ......................................................................5, 10, 12

7 C.F.R. § 457.104 ............................................................................................................12

7 C.F.R. § 457.134. ..........................................................................................................12

**Other**

"Cause of Loss Historical Data Files" at
      https://www.rma.usda.gov/SummaryOfBusiness/CauseOfLoss.  ...........................................17

https://www.prism.oregonstate.edu/ ...................................................................................22

## I.   <u>INTRODUCTION</u>

The Plaintiff, Derick Miller, is a farmer from Gaines County, Texas.     The Plaintiff purchased a federally reinsured policy of crop insurance to insure his 2021 cotton and peanut crops. There is no genuine dispute that Plaintiff's crops were negatively impacted by insurable causes of loss- including high winds- which occurred during the summer of 2021.  However, the Defendants herein determined Plaintiff failed to employ "good farming practices," and, as a result, his losses on the insured acres were determined to be uninsured.  Plaintiff now appeals the "good farming practices" determination issued by the Defendants which related to the production of his 2021 peanut and cotton crops.  The Plaintiff argues herein that the Defendants' "Good Farming Practices" determination was made in violation of the Agency's own regulations and procedure, was arbitrary, capricious, in error and unsubstantiated by substantial evidence of record.

### A.  Overview of the Federal Crop Insurance Program

This proceeding involves a Federal Crop Insurance Policy that was issued to the Plaintiff. Pursuant to the Federal Crop Insurance Act (FCIA), at 7 U.S.C. § 1501 *et seq.*, the United States Department of Agriculture (USDA), through the Federal Crop Insurance Corporation and the Risk Management Agency,  "licenses" private companies to sell and service crop insurance policies which are written and reinsured by the United States.[1]  In the present case, the Plaintiff purchased his policy from Crop Risk Services (CRS), an approved private insurance provider.  The indemnities are reinsured by the Defendants.  As a result, the Defendants are not disinterested parties to this proceeding and, if the Plaintiff should prevail, will have to reimburse Plaintiff's private "approved insurance provider," for any indemnity paid to the Plaintiff.  Even though most

---

[1] *Nobles v. Rural Community Ins. Servs*, 122 F.Supp.2d 1290, 1292 (M.D. Al. 2000).

federal crop insurance policies are sold by private companies such as CRS, the Defendants maintain significant control over the availability of crop insurance.[2]   The RMA establishes the terms and conditions of insurance.  The crop insurance policy provides that questions regarding "good farming practices" be resolved by the Federal Crop Insurance Corporation which is administered by the Risk Management Agency.

### B.  Good Farming Practices

 "Good farming practices" are defined in the relevant policy provisions and in Federal Regulations as:

> The **production methods utilized to produce the insured crop and allow it to make normal progress toward maturity** and produce at least the yield used to determine the production guarantee or amount of insurance, including any adjustments for late planted acreage, **which are those generally recognized by agricultural experts or organic agricultural experts, depending on the practice, <u>for the area</u>**.

> See Exhibit A to Plaintiff's Complaint at ECF Doc. No. 1-1, page 4, Definition of "Good Farming Practices" (emphasis added) *also codified in Federal Regulation at* 7 C.F.R. § 457.8 § 1 "Definitions" (2021).

The failure of an insured farmer to follow good farming practices can result in a determination that the insured farmer's losses are uninsured.[3]   In the present case, Plaintiff's Approved Insurance Provider, CRS, initially made a good farming practices decision.  However, all final good farming practices determinations must be made by the Defendants herein.  Congress specifically provided farmers such as the Plaintiff a right of review of such determinations in the Federal Crop Insurance Act wherein it is stated that "a producer shall have the right to a review of a determination regarding good farming practices made." 7 U.S.C.A. § 1508 (West).  The Plaintiff now brings suit to appeal the Defendants determination that he failed to use "good farming

---

[2] See 7 C.F.R. § 400.168(a).
[3] Please see ¶ 12 of the Policy at Exhibit A to Plaintiff's Complaint.

practices," as defined under the relevant policy and Federal law.  The crop insurance policy and the regulatory provision cited above is to be given the force and effect of Federal Law pursuant to the Supreme Court's opinion in *Federal Crop Ins. Corporation v. Merrill,* 332 U.S. 380 (1947). The policy as codified must be strictly construed by this Court.  Id.

## II.    UNDISPUTED FACTS REGARDING THE INSURED 2021 CROP

In 2021, the Plaintiff planted and insured 1,498 acres of cotton in Gaines County, 240 acres of cotton in Yoakum County, 1,197 acres of peanuts in Gaines County, and 240 acres of Peanuts in Yoakum County.  Numerous other farmers in these Texas counties also planted and insured peanuts and cotton.  2021 was a challenging year for these farmers who experienced multiple adverse weather conditions including drought, excess rainfall later in the year, high wind, and heat, which resulted in serious damage to growing crops.   Based on these aforementioned causes of loss, crop insurance claims were submitted by scores of area farmers.  At least one hundred and nineteen (119) crop insurance claims were paid in Gaines County, while another one hundred (100) claims were paid in Yoakum County.  The Defendant USDA Risk Management Agency has posted a publicly available record of these claims, along with the causes of each loss, on its own website.[4] Ninety-two (92) claims for losses to cotton were paid in Gaines and Yoakum counties, alone, for losses resulting from causes of loss including wind, heat, hail, and excess moisture.  In these same two counties where the Plaintiff farms, fifty-nine (59) claims for losses to peanuts were paid. These claims similarly resulted from causes of loss including wind, heat, hail, and excess moisture.

The Plaintiff's insured crops experienced the adverse weather conditions listed above.   He timely notified his insurance provider, CRS, of significant losses from high winds.  These winds

---

[4] See "Cause of Loss Historical Data Files" at https://www.rma.usda.gov/SummaryOfBusiness/CauseOfLoss.

were especially destructive and even destroyed some of his irrigation equipment during the growing season.  While similarly situated farmers received indemnities for their insured losses, the Plaintiff, Derick Miller, was denied his claims for indemnities on the alleged basis that he had failed to employ "good farming practices."

The genesis for the denial of the Plaintiff's crop insurance claims appears to have been an anonymous complaint that was made against the Plaintiff which resulted in the Defendants opening a review which specifically targeted the Plaintiff.  The Defendants' directed Plaintiff's crop insurance provider to conduct "growing season inspections," often referred to as a "GSI," on Plaintiff's insured farms.[5]  The GSI process involves compliance reviewers physically inspecting the insured crop throughout the growing season.  A growing season inspection was conducted on the Plaintiff's farms, and notes of adjusters/inspectors who actually visited the Plaintiff's fields are found in the administrative record.  Interestingly, the physical inspection of the Plaintiff's peanut crop indicated that while "some stands are weak," meaning plant populations were low in some areas, the Plaintiff's crops were "comparable" to those in the general area of Plaintiff's farms[6] and suggested that the operation should not be reviewed at a later time.[7]

Despite the results of the above-referenced growing season inspection, the heightened scrutiny of the Plaintiff's farming operation continued.  Plaintiffs' crop insurance provider, CRS, solicited "expert" opinions on the Plaintiffs' farming practices from James Todd, Mark Scott, and Dana Porter.  The Plaintiff provided letters and affidavits from area crop experts Geoff Cooper and Dr. Justin Tuggle.   A request for a final good farming practices determination was submitted to the Defendants' herein.  On October 25, 2022, the Defendants issued their "Good Farming

---

[5] Please refer to the Administrative Record at ECF Doc. No. 10-1, see USA-AR-0011.
[6] Please see the administrative record at ECF Doc. No. 11-4, see USA-AR-6463.
[7] Please see the administrative record at ECF Doc. No. 11-4, see USA-AR-6464.

Practices Determination for Derick Miller."[8]  This determination held that: 1) Miller's peanut irrigation and weed control practices did not meet good farming practices; and 2) Miller's cotton weed control practices did not meet good farming practices.  The Plaintiff, Derick Miller, now brings this appeal of these determinations.

### III.   <u>STANDARD OF REVIEW</u>

Pursuant to the Administrative Procedure Act, a reviewing court must set aside those agency determinations that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  This Court must also "hold unlawful and set aside agency action, findings, and conclusions found to be ... unsupported by substantial evidence,"[9]  as this is a case reviewed on the record pursuant to statute. 7 U.S.C. § 6999.   "Substantial evidence" is such *relevant* evidence as a reasonable mind might accept as adequate to support a conclusion." *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210 (Fed. 11th Cir., 2002).  Evidence is not substantial if it is overwhelmed by other evidence,[10] or if it constitutes mere conclusion.[11]

This is a case where the Plaintiff argues that the Defendants have ignored relevant factors such as wind damage to his irrigation equipment and improperly applied Georgia production practices to a West Texas peanut and cotton crop.  The question for this Court is *whether the Agency has followed the law in forming its "Good Farming Practices Determination," whether the Defendant Agency has ignored relevant factors, and whether substantial evidence supports the good farming practices determination?* The Defendants' refusal to base their determinations on agricultural experts for the Plaintiff's area <u>and</u> refusal to consider factors raised herein are not

---

[8] See the Administrative Record at ECF Doc. No. 13-2, at USA-AR-7248
[9] 5 U.S.C. Sec. 706(2)(E).
[10] *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.1990)
[11] *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994).

excusable errors.  In *Am. Stewards of Liberty v. Dep't of the Interior*, the District Court for the Western District of Texas recognized that Agency action that "disregards applicable law is arbitrary and capricious and must be set aside."  *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711 (W.D. Tex. 2019).  The Plaintiff herein asks this Court to do just that and to set aside Defendant's good farming practices determination.

"Under the Administrative Procedure Act (APA), an agency must comply with its own regulations, and the court must review an agency's actions to ensure conformity with relevant regulations." *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711 (W.D. Tex. 2019) Citing 5 U.S.C.A. § 704.  In addition, the Fifth Circuit Court of Appeals has recognized the applicability of the *Accardi Doctrine*, as established by the United States Supreme Court, holding that this doctrine "stands for the unremarkable proposition that an agency must abide by its own regulations." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) citing *Chevron Oil Co. v. Andrus,* 588 F.2d 1383, 1386 (5th Cir.1979). "An agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination." Id. citing *United States v. Morgan,* 193 F.3d 252, 266 (4th Cir.1999). *See also Alamo Express, Inc. v. United States,* 613 F.2d 96, 98 (5th Cir.1980).  The Judicial Review of agency action does not mean "that we must rubber-stamp the agency decision as correct," and, "rather, the reviewing court must assure itself that the agency decision was based on a consideration of the relevant factors (and that the agency) has exercised a reasoned discretion."[12]

---

[12] *Northwest Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309 (8th Cir. 1981).

## IV.   **ARGUMENT**

The Defendants have arbitrarily determined that Plaintiff did not use "good farming practices" (GFP's) in the production of his 2021 peanut and cotton crops. Specifically, Defendants' Good Farming Practices (GFP) determination concluded that Plaintiff's Peanut irrigation and weed control practices did not meet Good Farming Practices; and  Plaintiff's cotton weed control practices failed to meet Good Farming Practices.[13]  Defendants' failed to consider relevant factors in making these decisions, their determination was  not based on substantial evidence as required by the Administrative Procedure Act, nor was the Defendants' GFP determination based on production methods " **generally recognized by agricultural experts or organic agricultural experts, depending on the practice, <u>for the area</u>**" as required by the crop insurance policy and Federal Regulation at 7 C.F.R. § 457.8 ¶ 1.   The GFP determination and denial of the Plaintiff's crop insurance claim was an arbitrary and capricious agency action, in violation of USDA regulations and guidance as it rests upon conclusions based in *Georgia* production practices and the Defendants affirmatively ignored evidence supporting a finding that the Plaintiff did employ good farming practices but was also negatively impacted by insurable causes of loss.

A. **The  GFP Determination Is Properly Reversed by this Court Due to Defendant's Failure to Consider Weather Conditions and the Fact that Failure of Irrigation Water Supply and Failure of Weed Control Measures Can be Insurable Causes of Loss.**

The relevant GFP determination that Plaintiff appeals from includes a conclusory statement that "we considered all weather conditions you outlined in your response and concluded that a lack of water and excessive weed competition were the most limiting factors."[14]  The Plaintiff suggests that this decision is not based on substantial evidence.  How did the Agency Defendants conclude

---

[13] See ECF Doc. No. 13-2, USA-AR-7248.
[14] See Exhibit B to Plaintiff's Complaint, at age 3, *Analysis.*

that the adverse weather conditions that impacted his neighbors were not the "most limiting factors" for the Plaintiff's crop?  What weather conditions were considered? The administrative record provides no answer to this inquiry.  The Agency arbitrarily determined that lack of water and weed competition were a result of the Plaintiff's practices, instead of the adverse weather with which he was faced.  Perhaps the most striking oversight by the Agency Defendants is their failure to recognize and consider that *their own regulations* provide that failure of irrigation water supply and lack of weed control may be *insurable* causes of loss.  This failure of the Defendants to acknowledge their own regulations and procedures requires reversal by the Court.

Defendants' own Manager's Bulletin No.: MGR-05-010 provides that good farming practices (GFP) decisions "will be based on: . . . The agronomic situation of the producer, which includes material facts . . . as well as weather and climate factors."[15]  The Defendants' Good Farming Practice Determination Standards Handbook also requires that GFP determinations be based on "weather and climate factors" and "other factors affecting the crop."[16]  Yet, in the present case, the weather factors that affected Plaintiff's crop are not even named in the GFP determination.  The Defendants have concluded that the alleged failure of Plaintiff's irrigation and weed control measures constituted a failure to employ good farming practices but have also failed to address the impact of adverse weather conditions on irrigation and weed control.  For this reason, Defendants application an uninsured cause of loss for all of Plaintiff's crops in Yoakum and Gaines Counties[17] is improper and in violation of the applicable law guiding administration of the crop insurance program. The GFP decision must be reversed as Federal Regulation provides that losses

---

[15] See Appendix Page 9, Bulletin No: MGR-050-10 at Page 3, Paragraph B 1.
[16] See Appendix Page 4, GFP Determination Standards Handbook Excerpt at Paragraph 22 A, page 9.
[17] See the Administrative Record at ECF Doc. No. 13-2, USA-AR-7252.

resulting from failure of irrigation water supply and weed control can be insurable if they result from adverse weather conditions.

There is no dispute that the Plaintiff did, in fact, irrigate his crops and undertake weed control measures. However, in making their adverse determination to the Plaintiff, the Defendants completely _refused_ to consider the fact that any alleged irrigation or weed control failure could be the result of adverse weather conditions. There is no discussion of this possibility or the applicable regulation in Defendants' determination, making reversal under the APA appropriate.

### 1. *Failure of Irrigation Water Supply is not an Uninsurable Failure to Employ Good Farming Practices.*

Defendants assumed in their GFP determination that a lack of irrigation water, or the inability of a farmer to apply a certain amount of water to insured acreage, is an uninsurable failure to employ good farming practices. Such a conclusion is contrary to the guiding law and applicable RMA procedures. Federal Regulation and the Basic Provisions of crop insurance provide that crop insurance is provided to protect against "naturally occurring events."[18] The failure or breakdown of irrigation equipment is not a covered cause of loss "***unless the failure, breakdown or inability is due to a cause of loss specified in the Crop Provisions***."[19] In the present case, both the peanut crop provisions and the cotton crop provisions of insurance provide insurance against "failure of the irrigation water supply" if such a failure results from "adverse weather conditions."[20] The fact that the failure of irrigation water supply is insurable was completely ignored by the Defendants in their GFP "analysis" and not considered, even after such facts were offered to the

---

[18] See the Basic Provisions attached to Plaintiff's Complaint and codified at 7 CFR 457.8 ¶ 12 (2021).
[19] See the Basic Provisions attached to Plaintiff's Complaint and codified at 7 CFR 457.8 (2021), see ¶ 12 (d).
[20] See Peanut Crop Provisions at ¶ 11(h) *codified in Federal Regulation at* 7 C.F.R. § 457.134 and the Cotton Crop Provisions at ¶ 8 (h) *codified in Federal Regulation at* 7 C.F.R. § 457.104.

Agency.  The Agency Defendants ignored uncontroverted facts in the record which indicated that weather events did interrupt the irrigation capability of the Plaintiff.  This refusal to consider relevant factors and guiding law allowing insurance for such situations necessitates reversal of the GFP determination in this case.

A primary reported cause of loss for the damages to the Plaintiff's peanut and cotton crops was high wind.[21]  **The wind was so severe that it "flipped over" two of Plaintiff's center pivot irrigation systems**.[22]  Certain of Plaintiff's irrigation pivots were taken out of commission by high winds.  Mark Scott, whom the Defendants relied on in their GFP determination, conceded that "wind and rain events could have been partially to blame for plant stands."[23]  The Court doesn't have to accept the Plaintiff's word on these facts.  Mr. Scott confirmed that "straight and tornadic winds" . . . "did overturn some center pivots.  Repair and replacement timing was delayed by a shortage of new pivots and repair materials."[24]  Experts relied upon by the Defendants even conceded in the record that photographs taken by CRS adjusters "show windrows that have been wind blown and covered with sand."[25]  The refusal to acknowledge or consider these facts demonstrates arbitrary decision-making by the Agency Defendants.

### 2. *The Agency Erred in Finding that the Presence of Noxious Weeds must Result in an Adverse Good Farming Practices Determination.*

Just as the Defendants refused to acknowledge that failure of irrigation water supply is an insured cause of loss, the Defendants, in making their GFP determination, never acknowledged or considered that losses from weed infestation are similarly insurable.  There is no dispute that the

---

[21] See ECF Doc No. 11-5, at USA-AR-6613.
[22] See ECF Doc No. 12-3, at USA-AR-6963.
[23] See ECF Doc No. 13-2, at USA-AR-7165.
[24] See ECF Doc No. 13-2, at USA-AR-7171.
[25] See ECF Doc No. 11-8, at USA-AR-6832.

Plaintiff engaged in weed control measures.  Plaintiff concedes that a failure to employ any weed control measures would be a failure of a farmer to use "good farming practices."  However, that is not the case before the Court.  In this case, Defendants summarily determined that the presence of weeds must result in a finding that weed control measures were insufficient and that losses were uninsurable.  The Agency refused to consider the highly relevant factor of weather and the possibility that Plaintiff's weed control measures were impeded by insured causes of loss, specifically adverse weather conditions.

The Defendants have previously published policy procedure applicable to this situation. Defendants refusal to follow their own published procedure indicates arbitrary and capricious decision-making.  In interpreting the Basic Provisions of Crop Insurance, the Defendant RMA has previously taken the position that, if insect and weed infestations are the result of insured causes of loss, those losses are covered under the crop insurance policy.  For example, if a farmer cannot make a herbicide application due to adverse weather conditions, lack of weed control is insurable. In RMA Final Agency Determination FAD-239, the Agency established that "**An insect, disease, or weed infestation that was not due to insufficient or improper application of control measures could still cause damage to the crop and this is a covered cause of loss**."[26] The Defendant RMA has made clear that weed infestation damage resulting from covered causes of loss may be  "covered" under the crop insurance policy.

Nevertheless, in the present case the Defendants have ignored this relevant factor despite the fact that the Plaintiff raised the issue that his weed control was hampered by excess precipitation.  The Plaintiff noted in the record that "heavy rains and standing water after planting

---

[26] See Appendix 16.

were main causes of weed breakthrough,"[27] that "washing rains were main problem leaching and washing herbicides down the elevations,"[28] and that "we received a 1" rain on the acres before we could spray any type of preemergent."[29]  Weather data in the administrative record supports the Plaintiff's recollection of excess rainfall.  Even an expert relied on by the Defendant agency noted that "May was wet and cool" and that "June was unusually wet.[30]"  The Defendants refusal to consider these insurable causes of loss, which could have hampered weed control supports a finding by this Court that the Defendants' decision finding the Plaintiff did not employ good farming practices was arbitrary, capricious, and unsupported by substantial evidence.

### 3.  Refusal to Consider Weather Conditions Constitutes Reversible Error.

Despite the written assurance that RMA "considered all weather conditions," there is no discussion in the "analysis" portion of the GFP determination as to what weather conditions were considered.  There was no discussion or consideration of the possibility that the failure of the irrigation water supply or increased weed pressure could be the result of adverse weather conditions.  The Defendants ignored clearly relevant factors.  Another District Court recently affirmed that "weather-related facts are not irrelevant" to questions of "good farming practices" and that the Defendant RMA's own Good Farming Practices Handbook, which identifies the "Bases for GFP Decisions" requires that such determinations must be based on "weather and climate factors" and "other factors affecting the crop."[31]  **Weather is one of the factors for making a GFP decision, and it can be considered to the extent it affected"** . . . **"compliance with the requirements of GFP**."[32]  In *DL Farms, LLC, v. United States*, the Court found that the

---

[27] See the Administrative Record at USA-AR-6592.
[28] <u>Id</u>.
[29] Please refer to the Administrative Record at USA-AR-7007.
[30] Please refer to the Administrative Record at USA-AR-6830.
[31] <u>DL Farms LLC v. United States</u>, No. 3:21-CV-144, 2023 WL 5721700, at *3 (D.N.D. Sept. 3, 2023).
[32] <u>Id</u>.

RMA did, in making its Good Farming Practices Determination, cite the weather conditions and discuss their finding that adverse weather conditions were not extreme enough to affect the insured's farming practices.[33]  For this reason, that GFP determination was upheld.  Such facts are not present before this Court, where the determination appealed from only states that "we considered all weather conditions."   The adverse weather conditions (including high wind specifically) are not even mentioned in the GFP determination for Derick Miller.  This is clearly a case where relevant factors impacting crop losses and farming practices were not considered by the Defendant Agency and, as a result, reversal is appropriate.

### B. The Defendants' Reliance on Expert Reports Which Suggest that Farming Conditions Were "Ideal" and Defendants' Lack of Consideration of Opposing Expert Opinions Demonstrates Arbitrary Decision Making.

The Defendants relied exclusively on the reports of Mark Scott and James Todd, when making their GFP determination.  The Defendants effectively ignored expert affidavits from Geoff Cooper and Dr. Justin Tuggle, in addition to correspondence from Dana Porter.  The reliance on two (2) of five (5) available experts is arbitrary and, more importantly, patently unreasonable given the facts.  The reports by purported "experts" Mark Scott and James Todd failed to give significant attention to the presence (and potential impacts of) adverse weather conditions present during the 2021 growing season.  Mark Scott opined, in his report, that "2021 was a good year for growing peanuts,"[34] while James Todd wrote that "no weather events were noted that should have had an extreme detrimental effect on yield"[35] and that "2021, was an ideal year for peanut production."[36]  The arbitrary nature of Defendant's reliance on these reports is readily apparent when one recognizes that the Defendants had knowledge and have now published *on their own public*

---

[33] Id.
[34] Please refer to the Administrative Record at USA-AR-6738.
[35] Please refer to the Administrative Record at USA-AR-6833.
[36] Please refer to the Administrative Record at USA-AR-6840.

*website* that farmers in Gaines and Yoakum Counties submitted (and were paid on) fifty-nine (59) peanut crop insurance claims resulting from heat, wind, excess precipitation, etc. during this same time period that the purported experts considered "ideal" for production.[37]  While the Defendants received over 200 crop insurance claims for these two rural counties in 2021 alone,[38] they also *chose* to rely, in making a good farming practices determination, on opinions that ignored or negated the widespread impact of adverse weather and farming conditions in the area.

The Defendants also chose to ignore three (3) expert opinions.  In making their "good farming practices determination," the Defendants gave no significant attention to the opinion of Dr. Justin Tuggle, an agronomist who has written numerous publications concerning peanut production and irrigation, and who also explained for the record that weather conditions in 2021 were "extreme" and "fluctuated from drought to flooding to hot early to cool summer."[39] Defendants gave no consideration to the conclusion of County Agricultural Extension Agent Geoff Cooper who reported that Plaintiff's "farms are in much better shape than surrounding farms at this time"[40] and that "Mr. Miller has been following good farming practices in the 2021 growing season."

---

[37] Plaintiff's Counsel recognizes these documented claims are not included in the Administrative Record but contends they are relevant to the dispute and fall within certain limited exceptions to the record-only review rule.  The Fifth Circuit has noted there are exceptions to prohibitions concerning consideration of documents outside of the administrative record.  See *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir., 2006)  and  *Estate of Bratton v. Nat'l Union Fire Ins.*, 215 F.3d 516, 521 (5th Cir.2000). Relevant exceptions which support consideration of numerous paid crop insurance claims based on adverse farming conditions in Gaines and Yoakum Counties, include but are not limited to showing "bad faith on the part of the Agency" in regard to its suggestion that other farmers did not suffer from adverse weather conditions in 2021 and the fact that supplementation is necessary to demonstrate the Defendants have not considered "all relevant factors" in reaching their conclusions.

[38] See "Cause of Loss Historical Data Files" at https://www.rma.usda.gov/SummaryOfBusiness/CauseOfLoss.
[39] Please refer to the Administrative Record at USA-AR-6441.
[40] Please refer to the Administrative Record at USA-AR-6972.

Dana Porter, who provided an opinion at the request of Plaintiff's insurance provider," indicated that the fields to which the Plaintiff's crops were being compared were not similar to those farmed by the Plaintiff.  Mr. Porter questioned whether the yields reported for neighboring farmers were "truly representative" as they were taken from "much smaller acreages."[41] The Defendants ignored these concerns and blindly relied on the Scott and Todd opinions, in making their determination adverse to the Plaintiff.  Let us also  not forget that the crop insurance adjuster who actually visited the Plaintiff's insured farms actually reported that the Plaintiff's crops were "comparable" to those in the general area of Plaintiff's farms[42] and that the operation should not be reviewed at a later time.[43]  Yet another witness disregarded and completely ignored by the Defendants who chose to blindly rely on the Scott and Todd reports which were not favorable to the Plaintiff.

In forming the GFP determination that is the subject of the Plaintiff's Complaint, the Defendants gave only passing recognition to the fact that agronomists and agricultural experts Dr. Justin Tuggle, and County Ag Agent Geoff Cooper provided sworn affidavits[44] verifying that the production practices employed by the Plaintiff were "good farming practices" for the Plaintiff's area.  In determining that the Plaintiff's weed control measures failed to meet "good farming practices," Defendants simply deemed the opinion of Mark Scott as "more credible" than the affidavits of Geoff Cooper and Justin Tuggle.  What is this "credibility" determination based upon? The  Defendants'  determination  simply  includes  a  conclusory  statement  that  the  "specific observation and photographic evidence presented by Mark Scott and CRS was more credible."

---

[41] Please refer to the Administrative Record at USA-AR-6929.
[42] Please see the administrative record at ECF Doc. No. 11-4, see USA-AR-6463.
[43] Please see the administrative record at ECF Doc. No. 11-4, see USA-AR-6464.
[44] The affidavit of Geoff Cooper is available in the administrative record at USA-AR-7404 and the affidavit of Dr. Justin Tuggle is available at USA-AR-7409.

Such a conclusory opinion is not sufficient to satisfy the applicable Law guiding APA review of Agency actions.

It has been well established that, "the APA demands that agency decisions not be based on unreliable evidence, and **an agency must provide a coherent reason for refusing to consider the testimony of expert witnesses**." *McElmurray v. U.S. Dep't of Agric.*, 535 F. Supp. 2d 1318, 1325 (S.D. Ga. 2008) citing *Chao v. Gunite Corp.,* 442 F.3d 550, 559 (7th Cir.2006). In the present case, the Agency outlined no reasoned basis for refusing to consider the opinions of Geoff Cooper and Dr. Justin Tuggle. "**An agency may discredit the uncontradicted witness testimony based on credibility grounds, but only if the agency provides reasons for its credibility determination**. Id. Citing *Tieniber v. Heckler,* 720 F.2d 1251, 1254–55 (11th Cir.1983); *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 406–07(1962). The Agency has provided no reasoning to determine that Mr. Cooper or Dr. Tuggle are not "credible." The Defendants did not take the time to evaluate the applicable weather conditions or farming practices verified by experts Cooper and Tuggle.

> **C. Defendants' Factual Conclusions Regarding Farming Practices Are Not Supported by Substantial Evidence or the Opinions of Agricultural Experts For the "Area" as Required by Law. As a result, the Agency's Good Farming Practices Determination in this Case is Arbitrary, Constitutes an Abuse of Discretion, and is in Violation of the Procedure Required by Law, the Crop Insurance Policy, and Federal Regulation.**

The Plaintiff supported his production practices by relying on agricultural experts in his area. He contends that the Agency's determinations finding that he did not satisfy "good farming practices" in regard to his farming practices are arbitrary and without substantial support in the record. Each specific practice which received criticism will be addressed as follows, below.

### 1. *Peanut Irrigation*

In relevant part, the adverse GFP determination concluded that the Plaintiff did not follow the irrigated practice of supplying water at the critical time and in the proper amount to establish and maintain a proper stand of peanuts. As mentioned previously, this determination omitted any consideration of the fact that adverse weather conditions (high wind) made some irrigation impossible because the irrigation center pivots were actually rendered unusable by straight line and tornadic wind. The determination that lack of irrigation water is a poor farming practice should be reversed on this basis alone because adverse weather did prevent some irrigation. Perhaps more importantly, the Defendants decision that the peanut crop did not receive adequate irrigation is not based on "substantial evidence" and ignores the results of the growing season inspection which determined that the irrigation system and water was adequate for the insured crop.[45] Instead, the Defendants' experts estimated the amount of water applied to the crops based on historical weather and evapotranspiration data which was simply not reliable in an "extreme" weather year such as 2021.

Even more troubling is that the amount of water needed by the crop was based on data *from the State of Georgia and the Georgia Peanut Water Curve."*[46] The Crop Insurance Policy and Federal Regulations require that good farming practices are "those generally recognized by agricultural experts . . . for the area."[47] The "area" is similarly defined in Federal Regulation and in the policy. "Area" means "land surrounding the insured acreage with geographic characteristics,

---

[45] Please refer to the Growing Season Inspection Report in the record at USA-AR-6463.

[46] See the Administrative Record at ECF Doc. No. 11-6, USA-AR-6725 (report of Mark Scott).

[47] See Exhibit A to Plaintiff's Complaint at ECF Doc. No. 1-1, page 4, Definition of "Good Farming Practices."

topography, soil types and climatic conditions similar to the insured acreage."[48]  This Court should take judicial notice that the High Plains of West Texas are not similar to the Southeastern State of Georgia.  Reliance on Georgia publications for West Texas production practices is unreasonable, arbitrary and capricious.  Furthermore, it is in violation of regulation and procedure.[49]

**An administrative determination cannot be upheld without an articulated, rational connection between the facts before the agency and the agency's decision**. *McElmurray v. U.S. Dep't of Agric.*, 535 F. Supp. 2d 1318, 1335–36 (S.D. Ga. 2008) citing *Zahnd v. Sec'y of Dep't of Agric.,* 479 F.3d 767, 773 (11th Cir.2007).  "Agency regulations are an extension of the legislative process and bind the agency with the force and effect of law. As with statutes, an agency must comply with its own regulations, and the court must review an agency's actions to ensure conformity with relevant regulations."[50]

The thrust of the Defendant's determination relating to the irrigation of the Plaintiff's peanut crop is that the Plaintiff didn't provide enough water when it was needed by the crop.  The purported "needs" of the crop were based on research conducted *in Georgia*, not in the Plaintiff's area.  Both Mark Scott and James Todd attempted to "estimate" the amount of water needed by the Plaintiff's crop and the amount of water applied to the Plaintiff's crop.  Dr. Justin Tuggle who has published multiple articles on peanut irrigation made clear in his affidavit that "such estimates typically rely on assumptions of evapotranspiration, irrigation efficiency, pumping capability, and the actual depth of irrigation wells.  Soil temperature and plant size/growth stage will also have a

---

[48] See Exhibit A to Plaintiff's Complaint at ECF Doc. No. 1-1, page 3, Definition of "Area."  See also 7 CFR 457.8 (2021).
[49]
[50] Owen v. Fed. Crop Ins. Corp., No. 3:19-CV-00161, 2020 WL 5913668, at *5 (S.D. Tex. July 27, 2020), report and recommendation adopted, No. 3:19-CV-161, 2020 WL 5912602 (S.D. Tex. Oct. 6, 2020)

significant impact on the moisture needs of any agricultural crop."[51]  Defendants did not address Dr. Tuggle's concerns in their GFP determination.

In coming to opinion as to the irrigation needs of the Plaintiff's peanut crop, the James Todd report explicitly relies on weather data that is not relevant to the Plaintiff's geographic area. Mr. Todd conceded that "evapotranspiration data" for the area "was unavailable for the 2021 crop year" so he "determined that historical ET data could be used."[52]  The problem with this is that it has been well documented that 2021 was not an average year.  Even rainfall *estimates* in the Administrative Record indicate that precipitation for the months of May, June, and August, were above the historical average[53] and that August and September were wetter than usual.[54]  Mr. Todd conceded in his report that May and June were "wet,"[55] yet his report relies on precipitation estimates and historical evapotranspiration data which does not factor in these very-present adverse weather conditions.  The experts relied on by the Defendants appear to have relied on "PRISM reports" of precipitation[56] which are not actual records of rainfall received but instead the results of a model developed to "reveal short and long-term climate patterns."[57]

In summary, the Court has no record of how much rainfall the Plaintiff's crop received. Nor does the Court have a record of the actual amount of irrigation water that was actually needed, or used, by the insured peanut crop.  All the Court is left with are estimates (based upon historical data instead of 2021 data) and the opinions of witnesses.  The crop insurance adjuster reported that irrigation was adequate.  Dr. Justin Tuggle and Geoff Cooper suggest that irrigation was adequate.

---

[51] See the Administrative Record at ECF Doc. No. 13-3, USA-AR-7409.
[52] See the Administrative Record at ECF Doc. No. 13-3, USA-AR-6828.
[53] See the Administrative Record at ECF Doc. No. 13-3, USA-AR-7026-7027.
[54] See the Administrative Record at ECF Doc. No. 13-3, USA-AR-6759 and 6764.
[55] See the Administrative Record at ECF Doc. No. 13-3, USA-AR-6829.
[56] See the Administrative Record at ECF Doc. No. 13-2, USA-AR-7252.
[57] https://www.prism.oregonstate.edu/.

The reliance, by Defendant RMA, on historical averages, assumptions, and weather estimates is not reasonable given the conflicting opinions on the matter. Expert Dana Porter made clear that estimates as to irrigation water received by the insured crop would be based on "broad assumptions about the water table depth" and "assumptions about pumping plant efficiency."[58] These "assumptions" are not "substantial evidence" upon which an insured farmers claim should be denied. Defendant USDA RMA ignores these concerns in its final determination, and, as such reversal by this Court is appropriate.

### 2. *Peanut Weed Control*

Defendants arbitrarily concluded that Plaintiff's weed control practices were not "good farming practices" because some of his farms had weeds present at harvest. Defendants ignore the fact that the Administrative Record is full of references to the fact that excessive rainfall inhibited weed control measures. The basis for the conclusion that "good farming practices" were not employed appears to be a conclusion that the practices did not work. The determination clearly states "while post-emergence chemical and mechanical controls (cultivation hoeing, and mowing were applied; it appears that these methods were applied too late to adequately control the weeds."[59] There is evidence of record that adverse weather conditions impeded weed control. These facts were ignored by the Defendants in their determination as to good farming practices. As argued above, losses resulting from failure of weed control can be insured losses. The Defendants have deviated from their own procedure and policy by ignoring this possibility and denying the Plaintiff coverage for his losses.

---

[58] See the Administrative Record at USA-AR-6974.
[59] See Exhibit B to Plaintiff's Complaint at ECF Doc. 1-2, see page 3 of 7 and the Administrative Record at ECF Doc. No. 13-2, USA-AR-7250.

### 3. *Peanut Crop Rotation and Seeding Rate*

While the final "good farming practices" determination did not clearly include a determination as to whether the Plaintiff's seeding rate for peanuts was deficient, Defendants did find that Plaintiff "failed to follow recommended cropping and weed control practices,"[60] in relation to his peanut crop. The alleged failure to rotate peanut acres out of production was included as a basis for the Defendants' GFP determination relevant to peanuts in Gaines and Yoakum Counties. This determination should be summarily reversed as there is no genuine dispute that there were only a minor number of acres which were "back to back" peanuts in the 2021 crop year and that none of those acres were in Yoakum County.

The Defendants acknowledge that "on FSN 6000, 7492, and 1946" peanuts were grown in some of the same fields where peanuts had grown in 2020.[61] Not all of the fields in these locations, but some. A portion of the 247 acres on FSN 6000 had been previously planted to sunflowers. Farm Serial Numbers (FSN) 6000, 7492, and 1946 contain a total 639 acres in Gaines County, Texas.[62] There is no conclusion in the record as to how many peanut acres this "failure to rotate" determination may be applied to. Obviously, the Defendants should not have applied this determination to the Yoakum County peanut acreage. There also remains, at least, 558 acres of peanuts in Gaines County that this determination should not relate to. The fact that the Defendants applied a "failure to rotate" determination to acreage where this determination is clearly not applicable is further evidence of arbitrary and capricious conduct by the Defendants. It should also be noted that there is a contradiction of the expert opinions as to the necessity to rotate acreage

---

[60] See the Administrative Record at ECF Doc. No. 13-2, USA-AR-7252.
[61] See the Administrative Record at ECF Doc. No. 13-2, USA-AR-7250.
[62] See the Administrative Record at USA-AR-6474.

planted to peanuts, with County Ag Extension Agent Geoff Cooper writing that it is not necessary to rotate land out of peanut production in the Plaintiff's area.

In regard to seeing rates, Defendants wrote that "Your planting rate is lower than recommended by ag experts and sources."[63]  This is based on the conclusion that "your peanut stands were not comparable to neighboring peanut fields" and that "the UGA peanut production guide" proposed a higher seeding rate.[64]  As discussed in detail above, there is significant proof that Plaintiff's peanut stands were "comparable" to neighboring fields and that the fields relied on by RMA's chosen experts were not "representative."  These factors have been ignored by the Defendant.  However, the application of the University of Georgia, "UGA," peanut production guide to peanut production in the High Plains of West Texas is, once-again, a clear violation of Defendant's own crop insurance policy and published procedures.  The reliance on Georgia production standards is in contradiction with the plain terms of the Crop Insurance Policy and Federal Regulations which require that good farming practices are "those generally recognized by agricultural experts . . . for the area."[65]  The finding that Georgia production practices set the standard for "good farming practices" in West Texas is arbitrary and plainly  in violation of  the applicable regulations.

### 4.  *The GFP regarding Cotton Production Departed from RMA's Guidelines and Published Procedure.*

The only criticism of Plaintiff's Cotton farming practices is the allegation that Plaintiff failed to properly control weeds.  Again, Defendants have ignored the impact of weather conditions on weed control.  Defendants rely solely on the report of Mark Scott for their findings relating to

---

[63] See the Administrative Record at ECF Doc. No. 13-2, USA-AR-7250.
[64] See the Administrative Record at ECF Doc. No. 13-2, USA-AR-7250.
[65] See Exhibit A to Plaintiff's Complaint at ECF Doc. No. 1-1, page 4, Definition of "Good Farming Practices."

weed control in Cotton.  Mr. Scott's report is vague and makes the general finding that "the herbicide program used on Mr. Miller's farms during 2021 were lacking."[66] The determination relating to weed control in cotton should be reversed as it is not in compliance with the published RMA standards for GFP determinations.  The conclusion is not supported by an "additional expert opinion" as required by the Defendant's Good Farming Practices Standards Handbook as the written opinion is not supported by published documentation.[67] While the Scott report cites publications concerning herbicide use in cotton, they simply do not state that a "preplant incorporated" herbicide is necessary for cotton production in the Plaintiff's area.  Mark Scott's report notes that the Plaintiff did use a preemergence herbicide and post emergence herbicides. No publication is cited in support of the conclusion that Plaintiff's post-emergence herbicide control was "lacking."  Given the lack of support for the Scott report's conclusion, RMA's own published procedure required an additional expert opinion.  Defendants ignored this procedural protection for the farmer and relied on one (1) single opinion while disregarding expert Dr. Justin Tuggle's affidavit which clearly stated "Mr. Miller's herbicide and fungicide program was adequate."[68] Defendants' similarly disregarded Geoff Cooper's expert opinion affidavit.  Now, Defendants are relying on one expert and disregarding two!  The Plaintiff suggests that the aforementioned disregard for the procedures outlined in the GFP handbook provides sufficient basis for this Court to reverse the Agency's GFP determination in this case.

## V.    <u>CONCLUSION</u>

This Court should reverse the Defendant's conclusions that Plaintiff did not follow "good farming practices." A thorough review of the record demonstrates that the Plaintiff's crop was

---

[66] See Administrative Record at ECF Doc. No. 13-2, USA-AR 7251.
[67] See Appendix Page 10, GFP Determination Standards Handbook Excerpt at Paragraph 22 A(3).
[68] <u>Id</u>.

damaged by an insurable cause of loss, high wind and excess precipitation, and that the Defendant's determination that these losses are uninsurable as a failure to employ good farming practices is arbitrary and capricious.  Furthermore, the Defendants' refusal to follow their own regulations and reliance on publications relating to *Georgia* peanut production provides a basis for reversal in that the Defendants have failed to follow the USDA's own published procedure and the applicable law.  For the foregoing reasons, the Court should grant this Motion for Judgment on the Record.

DATED:  January 17, 2024.

Respectfully submitted,

By:      */s/ Grant Ballard*
         J. Grant Ballard (AR Bar # 2011185)
         ARK AG LAW, PLLC
         P.O. Box 224
         Clarendon, AR 72029
         T:  (870) 747-3813
         F:  (870) 747-3767
         E:  gballard@arkaglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was filed with the Court's electronic case filing (ECF) system on January 17, 2024, which caused an electronic copy of this document to be served on all counsel of record.

/s/ Ann E. Cruce-Haag
ANN E. CRUCE-HAAG
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:      (806) 472-7351
Facsimile:        (806) 472-7394
Email:   ann.haag@usdoj.gov